IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRUST DEBT RECOVERY, BRUCE TEITELBAUM, | ) ) ) | Case No. 21-cv-02702 |
| Plaintiffs, | ) ) | Judge Sharon Johnson Coleman |
| v. | ) ) ) | |
| RUBEN YBARRA, YRY HOLDINGS, LLC, and BOULDER HILL APARTMENTS, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' COMBINED MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

NOW COME Defendants, RUBEN YBARRA ("Ybarra"), YRY HOLDINGS, LLC, ("YRY") and BOULDER HILL APARTMENTS ("BHA") (collectively, "Defendants"), by and through their attorneys, Rakesh Khanna and Christopher V. Langone, and as *Defendants' Combined Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)*, state as follows:

### INTRODUCTION

Plaintiffs seek what is, in essence, an advisory opinion about the validity of a hypothetical state court complaint, which has not even been filed. Armed only with a demand letter that was not even directed at Plaintiffs, and vague allegations regarding verbal threats of a lawsuit, Plaintiffs have come into federal court seeking a declaration that they should not be sued in Illinois state court on state court claims. No federal question is presented in this case. These Plaintiffs lack standing, and regardless, any dispute is not ripe. Thus, this Court lacks jurisdiction under Article III of the Constitution as there is presently no actual "Case or Controversy." Accordingly, the matter should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for want of jurisdiction.

1

Moreover, Plaintiffs also do not properly allege the citizenship of the parties or amount in controversy, both jurisdictional requirements to assert diversity jurisdiction. This also requires dismissal under Fed. R. Civ. P. 12(b)(1).

Finally, the "abuse of process" claim (Count III) does not state a claim upon which relief can be granted. Accordingly, Count III should be dismissed pursuant Fed. R. Civ. P 12(b)(6).

## ALLEGATIONS OF THE COMPLAINT

Paragraphs 1-6, 8, 10, 21-31, 35 of the Complaint constitute a lengthy and irrelevant screed against Ybarra (Complaint at ¶¶ 1-6, 8, 10, 21-31 & 35). These allegations are irrelevant to the putative claims asserted. This lawsuit has nothing whatsoever to do with Ybarra's actions 15 years ago – the allegations are calculated to do nothing more than try to tar Ybarra as a "bad guy." They should be stricken pursuant to Fed. R. Civ. P. 12(f). Indeed, Ybarra is not a proper Defendant in this lawsuit; he never "threatened" a lawsuit or served any discovery on anybody.[1]

Ultimately, when stripped of the hyperbolic surplusage, this action purports to seek a declaration that a purported "malicious prosecution" lawsuit – which has not even been filed – yet "threatened" by YRY and BHA against Centrust Bank NA ("Centrust"), lacks merit. Count I of the Complaint seeks a declaration that "Defendants have no valid claim against Plaintiffs for malicious prosecution" (Complaint at ¶ 81; Wherefore Clause at A & B). Count II seeks a declaration that "Defendants have no valid claim for abuse of process against Plaintiffs." (Complaint at ¶ 90; Wherefore Clause at A - C).[2] The "threat" regarding which Plaintiffs seek a

---

[1] Astoundingly, the "abuse of process" count (Count III) complains that service of discovery constituted an "abuse of process."

[2] Count III claims "abuse of process" in connection with discovery served in a state court collection action. Count III is collateral to the gravamen of the Complaint and should be dismissed for failure to state a claim and because it cannot meet the amount in controversy requirement. See Section III, below.

declaration, consists of a "demand" letter, which is attached as "Exhibit 9" to the Complaint ("Demand Letter") and is attached hereto as **Exhibit 1**.

The Demand Letter was sent by attorney Michael Tannen, on behalf of YRY and BHA, almost a year ago. The Demand Letter does not purport to be written on behalf of Ybarra, and does not threaten any action against Plaintiffs herein (it threatens an action against Centrust Bank, which is not a party to this lawsuit). Indeed, the Demand Letter does not even threaten a claim for "malicious prosecution," or "abuse of process" (as Counts I and II seek a declaratory judgment regarding) but rather, for negligence and intentional interference with contract and prospective economic advantage. (See **Exhibit 1**). The claim for declaratory judgment action is really a request for an advisory opinion about a hypothetical and contingent dispute – a dispute that does not even involve the Plaintiffs herein.

The allegations in support of the purported "abuse of process' claim complain that Defendants issued "burdensome discovery requests" (Complaint at ¶ 62) for the purpose of "conducting discovery regarding a potential [claim]" (Complaint at ¶ 61). This is purportedly the basis for the abuse of process claim. (See, Complaint at ¶ 93, stating "Defendants pretended the discovery requests were served for the purpose of developing evidence to defeat the Motion for Judicial Determination and prevent PTCV from attaching the Apartments. However, Defendants' true purpose and motive for serving the discovery on Plaintiffs was to develop evidence for a subsequent lawsuit against Plaintiffs and others," and Complaint at ¶ 97, stating "It was not proper for Defendants to serve abusive discovery on Plaintiffs in the Collection Lawsuits.") Count III does not make any valid allegations regarding the amount in controversy, or show how receiving discovery requests caused more than $75,000 in damages. Moreover, as argued below, discovery is not "process" as that term is defined under Illinois law.

3

**ARGUMENT**

The Declaratory Judgment Act provides, with irrelevant exceptions: "In a *case of actual controversy* within its jurisdiction," a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). This case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because: (1) there is no actual case or controversy, as required by Article III of the Constitution (See Section I, below); and (2) Plaintiffs do not properly allege citizenship or amount in controversy to sustain diversity jurisdiction (See Section II, below). Moreover, Count III does not state a claim upon which relief can be granted, and therefore should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) (See Section III, below).

**I.     There is no jurisdiction because there is no "case of actual controversy," as required by the Declaratory Judgment Act.**

The phrase "case of actual controversy" in the Declaratory Judgment Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Rock Energy Coop. v. Village of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010). The requirements of the Declaratory Judgment Act and those of Article III are therefore coextensive. *Aetna Life Ins. Co.*, 300 U.S. at 239–41. "Cases and Controversies" encompass two closely related concepts: ripeness and standing, both of which are jurisdictional pre-requisites. *Smith v. Wis. Dep't of Agric., Trade and Consumer Prot.,* 23 F.3d 1134, 1141 (7th Cir.1994). This case fails for both reasons.

### A. These Plaintiffs lack standing to pursue a claim under the Declaratory Judgment Act.

"The doctrines of standing and ripeness are closely related, and in cases like this one, perhaps overlap entirely." *Smith*, 23 F.3d at 1141 ("Both doctrines stem from Article III's requirement that federal courts have jurisdiction only over 'cases and controversies'"). See also, Gene R. Nichol, Jr., RIPENESS AND THE CONSTITUTION, 54 U. Chi. L. Rev. 153, 173 (1987) (noting that the Supreme Court "appears to have used the two lines inquiry interchangeably"). A plaintiff lacks standing when "threat of injury from the alleged course of conduct [that the plaintiffs] attack is simply too remote to satisfy the `case or controversy' requirement." *Smith*, 23 F.3d at 1141. Here, the threat of injury is too remote. Defendants YRY and BHA, through counsel, sent a demand letter – nothing more. Indeed, the Demand Letter was sent to Centrust Bank – and threatened a potential claim against Centrust Bank – *not* CNTRST Debt Recovery and/or Teitelbaum. Thus, the Plaintiffs herein lack standing.

Moreover, even if Plaintiffs confront a threat sufficient to confer standing, a dispute may remain "too 'ill-defined' to be appropriate for judicial resolution until further developments have more sharply framed the issues for decision." Richard H. Fallon, Jr., THE LINKAGE BETWEEN JUSTICIABILITY AND REMEDIES—AND THEIR CONNECTIONS TO SUBSTANTIVE RIGHTS, 92 Va. L. Rev. 633, 670 (June 2006) citing *United Pub. Workers of Am. (CIO) v. Mitchell*, 330 U.S. 75, 90 (1947) (holding, in the context of challenges to statutes, actual interference is required and stating "a hypothetical threat is not enough"). In other words, this dispute is not ripe (See Argument I-B, below).

> **B.** **This dispute is not ripe, it is too contingent, hypothetical and abstract to meet the requirements of Article III of the Constitution; it, in essence, seeks an advisory opinion.**

An important aspect of the case-or-controversy requirement is ripeness, which is also jurisdictional in nature. *Metropolitan Washington Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 n.13 (1991). ("[Ripeness] concerns our jurisdiction under Article III, so we must consider the question on our own initiative."). The ripeness doctrine is drawn "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). The purpose of this doctrine is to forestall "entanglement in abstract disagreements" through "avoidance of premature adjudication." *Abbot Labs. v. Gardner*, 387 U.S. 136, 148 (1967). "The key considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *New Orleans Public Serv., Inc. v. Counsel of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987), quoting *Abbot Labs.*, 387 U.S. at 149.

Declaratory judgment actions are ripe and otherwise justiciable when "'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). There must be a "definite and concrete," "real and substantial" dispute that "touches the legal relations of parties having adverse legal interests" and "admits of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, quoting *Aetna*, 300 U.S. at 240–41.

Three basic factors are considered by courts to determine whether a matter is ripe for controversy: (1) a legal dispute that is real and not hypothetical; (2) a concrete factual predicate so as to allow a reason for adjudication; and (3) a legal controversy that can sharpen the issues for judicial resolution. *Flast v. Cohen*, 392 U.S. 83, 96 (1968). Plaintiffs do not satisfy these requirements.

The Seventh Circuit's decision in *Solo Cup Co. v. Federal Insurance Co.*, 619 F.2d 1178 (7th Cir. 1980) is instructive. In *Solo Cup*, the Seventh Circuit dismissed, as unripe, an employer's request for a declaration that its insurer must indemnify it for yet-to-be-filed lawsuits. The employer had settled one plaintiff's discrimination claim and sought indemnification for the settlement; that claim was clearly justiciable. *Id*. at 1183. In the meantime, the federal government had issued a report finding that the employer had discriminated against some 70 additional employees; the employer sought a judgment declaring that any sums it might have to pay on these potential discrimination claims would be within the indemnity coverage of the insurer's policy. *Id*. at 1188–89. That claim was unripe because "[t]<u>he mere possibility that proceedings might be commenced</u> against an insured is not sufficient to create a controversy within the meaning of either the Declaratory Judgment Act or Article III of the Constitution." *Id.* at 1189.

The doctrines of ripeness and standing prohibit a federal court from deciding a question that depends on so many future events that a judicial opinion would be "advice about remote contingencies." *Rock Energy*, 614 F.3d at 748, quoting *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006). That is what Plaintiffs are asking here. Plaintiffs are asking this Court to opine on the validity of a hypothetical state court action based solely on a demand letter. It is hard to imagine the floodgates that would be opened if a litigant could run into federal court every time he received a pre-suit demand letter, requesting that the federal court adjudicate the validity of the

potential claim(s) referenced in the demand letter – and to do so without regard to the benefit of specific facts in a pleading, or without considering whether the hypothetical lawsuit referenced in the demand letter would otherwise involve a federal question or satisfy the requirements for diversity.

Jurisdiction is assessed at the time of filing. *Cf. Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir 1998) ("Unless the amount in controversy was present on the date the case began, the suit must be dismissed for want of jurisdiction."). At the time of filing, no state court complaint was filed – it was speculative regarding whether one would be filed, and what it would allege. So, even if a subsequent suit is filed in state court, jurisdiction cannot be retroactively conferred.[3]

## II. Plaintiffs cannot demonstrate diversity jurisdiction.

### A. Plaintiffs' allegations regarding citizenship are inadequate.

As to Plaintiff, Teitelbaum, Plaintiffs only allege his residence. (Complaint at ¶ 15) An individual's residence is not necessarily his domicile; a person can have more than one residence, but he can have only one domicile. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914); *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006); *Guar. Nat'l Title Co. v. J.E.G. Assocs.*, 101 F.3d 57, 58-59 (7th Cir. 1996); *Am.'s Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992).

---

[3] Also, if a state court case is filed then this Court would need to consider whether to abstain pursuant to the *Wilton-Brillhart* doctrine. See *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). Defendants do not want to deal in contingency and hypotheticals, as Plaintiffs do; however, if Defendants do, in fact, do what Plaintiffs fear they will, then there will be parallel cases and *Wilton-Brillhart* squarely implicated. *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (quoting *Wilton*, 515 U.S. at 282) (*Wilton-Brillhart* articulates district courts' substantial discretion to dismiss or stay a case where they are called upon "'to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties.'")

As to YRY, a limited liability company, Plaintiffs do not make allegations about the specific members of YRY. A generic statement that "members are citizens of Texas," (Complaint at ¶ 17) is insufficient. The Seventh Circuit requires each member be identified and its citizenship alleged with particularity See, *Romspen Mortgage Limited Partnership v. BGC Holdings LLC*, 20-3017, a copy of the Seventh Circuit's Order is attached as **Exhibit 2** (noting the members of a limited liability company must be identified "<u>by name</u>" (emphasis in original). And if any of the members are themselves limited liability companies, then the nested membership must also be alleged. See *Hicklin Engineering, L.C. v. R.J. Bartell*, 439 F.3d 346, 347-48 (7th Cir. 2006) (citizenship of a limited liability company is that of its members). The citizenship of such incorporated association and partnership must be traced through however many layers of members and partners there may be. *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002). Plaintiffs do not satisfy the requirements to allege a limited liability company's citizenship.

  **B.**  **Plaintiffs' claimed damages cannot exceed $75,000.**

The Plaintiffs assert, but no facts support, damages in excess of $75,000. To the extent discovery is "process" (it is not, see Argument III-A above), it is inconceivable that Plaintiffs expended more than $75,000 responding to discovery. Plaintiffs do not allege an amount of attorneys' fees spent, or attach any bills. This matter does not meet the amount in controversy and should be dismissed on the grounds that diversity jurisdiction cannot be established. This results in dismissal for lack of jurisdiction because the Declaratory Judgment claims cannot independently confer jurisdiction. *Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only").

**III.     Count III should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.**

Count III of the complaint seeks to assert a claim for abuse of process. The Plaintiffs allege that the Defendants propounded discovery requests and "pretended the discovery requests were served for the purpose of developing evidence to defeat the Motion for Judicial Determination and prevent PTCV from attaching the Apartments." (Complaint at ¶ 93). However, "Defendants' true purpose and motive for serving the discovery on Plaintiffs was to develop evidence for a subsequent lawsuit against Plaintiffs and others." (*Id.*) These allegations are insufficient to state a claim for abuse of process.

Two elements are required to plead a cause of action for abuse of process: (1) the existence of an ulterior purpose or motive for the use of regular court process, and (2) an act in the use of process is not proper in the regular prosecution of a suit. *Bonney v. King,* 201 Ill. 47, 51 (1903) ("Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process. The declaration does not aver either that the plaintiff was arrested or his property seized."); *Kumar v. Bornstein,* 354 Ill.App.3d 159, 165 (2004); *Holiday Magic, Inc. v. Scott,* 4 Ill. App.3d 962, 967 (1972) (noting that, generally, "misapplication of process has been found only in cases in which plaintiff has suffered an actual arrest or seizure of property"). As the tort of abuse of process is not favored under Illinois law, its elements must be strictly construed. *Erlich v. Lopin-Erlich,* 195 Ill.App.3d 537, 539 (1990).

Plaintiffs' allegations cannot sustain a claim for abuse of process because: (1) issuing discovery is not "process," and there are no allegations in the Complaint regarding any "process;" (2) the alleged improper purpose is not the kind of improper purpose required to satisfy the first element; and (3) in any event, using discovery to discover facts to support potential claims, counterclaims, or other claims, is a proper use of discovery; the second element is not met.

10

### A. The Complaint does not allege the use (or abuse) of process, as term is understood under Illinois law.

As in *Holiday Magic, Inc. v. Scott,* "there is no allegation regarding any act in the use of process that was not proper in the regular prosecution of the proceedings; and, in fact, no allegation regarding any use of process." 4 Ill. App. 3d 962, 967 (1972). Discovery is not "process." As the court in *Holiday Magic* explained,

> [I]t is essential to recall the precise definition of the word "process." This apparently simple term has been the subject of varying definitions from ancient times. See Black's Law Dictionary, Fourth Edition, pages 1370 and following under the heading "Process." Upon careful consideration of the varying elements in the definitions used in other states, we would define process as any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property. There is no allegation in the amended complaint regarding any use of summons or other process by these defendants in their prior action.

*Id.* at 968; *Doyle v. Shlensky,* 120 Ill.App.3d 807, 816 (1983) ("Process is issued by the court, under its official seal and must be distinguished from pleadings, which are created and filed by the litigants.")

Discovery (absent a subpoena) does not obtain jurisdiction over a person (or property). It is not issued by the court, under official seal. It is more akin to a pleading, as in *Doyle v. Shlensky,* 120 Ill.App.3d 807, 816 (1983); See also, *Kurek v. Cavanaugh, Scully, Sudow, White, Fredrick*, 50 Ill. App. 3d 1033, 1038 (1977) ("the mere filing of a lawsuit, even with a malicious motive, does not constitute an abuse of process").

Plaintiffs do not allege the use (or abuse) of subpoenas. And even if subpoenas were issued, it is inconceivable – and certainly not alleged – that the damages would exceed $75,000 in connection with responding to a subpoena. As in *Ewert v. Wiebolt Stores, Inc.*, 38 Ill. App. 3d. 42 (1976), Plaintiffs have alleged no acts "other than the [prosecution] of a civil action. No improper process has been charged, nor has any damage been asserted other than that necessarily incident

11

to the filing of a lawsuit." Plaintiffs' allegations do not satisfy the amount in controversy requirement.

> **B.  Plaintiffs do not satisfy the first element of an abuse of process claim by pleading improper purpose, such as intimidation, extortion or embarrassment.**

To satisfy the first element of an abuse of process claim, "a plaintiff must plead facts which demonstrate that the defendant instituted the proceedings for an improper purpose, such as intimidation, extortion, or embarrassment." *Kumar,* 354 Ill.App.3d at 165; *Neurosurgery and Spine Surgery, S.C. v. Goldman,* 339 Ill.App.3d 177, 182 & 183 (2003) ("Abuse of process is the misuse of legal process to accomplish some purpose outside the scope of the process itself"). Seeking discovery to support potential subsequent claims is not an improper purpose. Indeed, it is well within the purpose of discovery. Nonetheless, even taking as true the allegation that Defendants had an improper purpose, "the mere institution of a suit for an improper purpose does not itself constitute an abuse of process, the second element being the gravamen of the offense." *Holiday Magic, Inc.,* 4 Ill. App.3d at 967. See also *McGrew v. Heinold Commodities, Inc.,* 147 Ill.App.3d 104, 112 (1986) (stating that "[t]he mere existence of an ulterior motive in performing an otherwise proper act does not constitute abuse of process"). Issuing discovery is an otherwise proper act, regardless of motive, and thus cannot constitute abuse of process. *Dixon v. Smith-Wallace Shoe Co.,* 283 Ill. 234, 242 (1918) (noting that a claim for abuse of process "means the perversion of it; *i.e.,* accomplishing some illegal object or purpose for which such process was not legally intended").

> **C.  Plaintiffs fail to allege facts to plausibly support the second element of an abuse of process claim.**

"The test for sufficiency of the allegation pertaining to the second element is whether process has been used to accomplish some result which is beyond the purview of the process, or

which compels the party against whom it is used to do some collateral thing which he could not legally be compelled to do." *Doyle v. Shlensky*, 120 Ill. App.3d 807, 816 (1983); *Cartwright v. Wexler, Wexler & Heller, Ltd.,* 53 Ill. App. 3d 983, 986 (1977). No such allegations exist in this Complaint.

"When process is used only for its intended purpose, there has been no misapplication of process." *Neurosurgery and Spine Surgery, S.C,* 339 Ill.App.3d at 183. Here, discovery (which again, is not even "process") was used for its intended purpose: to discover information. The motive in seeking such information (alleged here to gain information to support a possible lawsuit) does not give rise to an abuse of process claim.

For instance, in *McGrew v. Heinold Commodities, Inc.*, 147 Ill. App. 3d 104, 111 (Ill. App. Ct. 1986) the court explained, "the garnishment summonses … were used to collect money, the very purpose for which the process was created. …the validity of the underlying debt is simply irrelevant to an abuse of process claim." Indeed, second element generally has been found only in instances in which plaintiff has suffered an actual arrest or a seizure of property. *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 295 F. Supp. 1155 (N.D. Ill. 1969); *Holiday Magic, Inc.; John Allan Co. v. Brandow,* 59 Ill. App.2d 328, 207 N.E.2d 339 (1965); *Ewert v. Wieboldt Stores, Inc.*, 38 Ill. App. 3d 42, 43-44 (Ill. App. Ct. 1976).

The Illinois Appellate Court recently discussed the tort of abuse of process in *Sweports, Ltd. v. Abrams*, 1-20-0139 (Ill. App. Ct. June 30, 2021). There, the Court explained. and is worth quoting at length:

> ¶ 52 The complaint in the instant case did not allege facts that establish a misapplication of process. The plaintiffs' primary contention is that filing multiple lawsuits is itself an abuse of process. The institution of an action, however, is not a process of the court. *Community National Bank in Monmouth,* 156 Ill.App.3d at 583. "Process" has been defined as any means used by the court to acquire or exercise its jurisdiction over a person or over specific property. *Neurosurgery and*

13

> *Spine Surgery, S.C,* 339 Ill.App.3d at 183. For example, the plaintiffs' allegation that Abrams knowingly filed a time-barred derivative action is based on a "pleading" - not a court "process" - and is thus outside of the scope of an abuse of process claim.
>
> ¶ 53 The defendants' other conduct as alleged in the complaint - *e.g.,* based on the proofs of claim filed by the defendants in the bankruptcy proceeding - also does not constitute an abuse of process as such conduct is consistent with "very purpose for which the process" *(e.g.,* bankruptcy) was created. *McGrew,* 147 Ill.App.3d at 111. See *Kumar,* 354 Ill.App.3d at 170 (observing that initiating the underlying lawsuit and procuring a writ of attachment and an arrest warrant to obtain compliance with certain discovery orders were "acts that were not extraneous to the purpose of the proceedings, but were proper in the regular course of the suit"); *Erlich,* 195 Ill.App.3d at 539 (noting that even if the parties made false representations to the court to obtain a temporary restraining order (TRO), the "seeking and obtaining of a TRO was done in the regular prosecution" of the marital dissolution proceeding and thus the complaint for abuse of process was properly dismissed). While the plaintiffs alleged that the defendants misstated or exaggerated the underlying debt at issue - for example, by filing inflated proofs of claim - the validity of the underlying debt is "simply irrelevant to an abuse of process claim." *McGrew,* 147 Ill.App.3d at 111.
>
> ¶ 54 Although not a required element of the claim, we note that a cause of action for abuse of process in Illinois generally has been based on an arrest or a seizure of property. *Kumar,* 354 Ill.App.3d at 165 (noting that" [w]hile we have found no Illinois case *** that allows an abuse of process claim in the absence of an arrest or physical seizure of property, we agree with plaintiff that an arrest is not a required element of abuse of process"). See also *Withall v. Capitol Federal Savings of America,* 155 Ill.App.3d 537, 544 (1987) (noting that plaintiffs asserting a cause of action for an abuse of process generally are required to have suffered an actual arrest or seizure of property); *Ewert v. Wieboldt Stores, Inc.,* 38 Ill.App.3d 42, 43-44 (1976) (same). Even if we accept the plaintiffs' characterization of the involuntary bankruptcy case as a "seizure" of Sweports' assets, the complaint failed to allege any act by the defendants in the use of legal process which was not proper in the prosecution of their actions.
>
> ¶ 55 In sum, "the tort of abuse of process is a very narrow tort." *Neurosurgery and Spine Surgery, S.C.,* 339 Ill.App.3d at 184. As count I of the complaint did not allege sufficient facts to satisfy the elements of abuse of process, the circuit court did not err in dismissing this count with prejudice.

As can be seen from this extended discussion, there is simply no way Plaintiffs' allegations give rise to the tort of abuse of process, which is a very narrow tort, and where almost every case sustaining the claim required arrest or property seizure to state a claim.

14

WHEREFORE, Defendants request that Plaintiffs' Complaint be dismissed pursuant to Federal Rules 12(b)(1) and/or 12(b)(6); and such further and other relief as this Court deems just and proper.

                                Respectfully Submitted

                                **RUBEN YBARRA, YRY HOLDINGS, LLC, and BOULDER HILL APARTMENTS**, Defendants

                                By: /s/ Christopher V. Langone
                                    One of their attorneys

Christopher V. Langone, Esq.
PO Box 5087
Skokie, IL 60077
Tel. 312-720-9191
Email: LangoneLaw@gmail.com
Attorney No. 6211105

Rakesh Khanna, Esq.
Weissberg and Associates, Ltd.
564 W. Randolph Street, 2nd Floor
Chicago, Illinois 60661
T: 312-663-0004
Email: rakesh@weissberglaw.com
Attorney No. 6243244